Citation Nr: 1744030 
Decision Date: 09/27/17 Archive Date: 10/10/17

DOCKET NO. 09-29 330 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio


THE ISSUES

1. Entitlement to service connection for posttraumatic stress disorder (PTSD).

2. Entitlement to service connection for an acquired psychiatric disorder other than PTSD, to include depressive disorder and/or a neurocognitive disorder.


WITNESSES AT HEARING ON APPEAL

Appellant and his father

REPRESENTATION

 Appellant represented by: Peter J. Meadows, Attorney


ATTORNEY FOR THE BOARD

A.J. Turnipseed, Counsel


INTRODUCTION

The appellant is a Veteran who served on active duty from January 1973 to December 1976. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a July 2010 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) above which, in pertinent part, denied service connection for PTSD. 

The Veteran perfected an appeal with respect to the PTSD claim but review of the record shows the Veteran has been variously diagnosed with other acquired psychiatric disabilities, including depressive disorder and a neurocognitive disorder. Therefore, the Board has recharacterized the issue on appeal more broadly to encompass any currently diagnosed acquired psychiatric disorder other than PTSD. See Clemons v. Shinseki, 23 Vet. App. 1, 4-5 (2009). However, because the issue of service connection for an acquired psychiatric disorder other than PTSD is based on separate and distinct disabilities, as well as different criteria for service connection than the specific regulatory requirements for PTSD, the Board has separated the issues pertaining to the claimed psychiatric disorders as listed on the title page. See Tyrues v. Shinseki, 23 Vet. App. 166, 176 (2009) (noting that it is permissible for VA to bifurcate a claim for service connection based on different theories). 

In April 2012, the Veteran, his father, and his brother testified via video conference before a Veterans Law Judge who is no longer employed; however, the transcript of the hearing reveals that the hearing was postponed in order to clarify the issue of representation. In November 2012, the appeal was remanded to schedule the Veteran for his requested videoconference hearing. In May 2014 correspondence, however, the Veteran's attorney indicated that the Veteran did not wish to appear at a hearing. Therefore, the Veteran's hearing request is deemed withdrawn. 

This appeal was most recently remanded by the Board in February 2015 for additional evidentiary development, which has been completed. Accordingly, the appeal has been returned to the Board for further consideration. 

For reasons explained below, the issue of service connection for an acquired psychiatric disorder other than PTSD is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The Veteran does not have a current diagnosis of PTSD that is consistent with 38 C.F.R. § 4.125 (a) (2016). 


CONCLUSION OF LAW

The criteria for service connection for PTSD have not been met. 38 U.S.C.A. § 1110 (2014); 38 C.F.R. §§ 3.303, 3.304 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). 

Neither the Veteran nor the representative in this case has referred to any deficiencies in either the duties to notify or assist; therefore, the Board may proceed to the merits of the claim. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015, cert denied, U.S.C. Oct.3, 2016) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board....to search the record and address procedural arguments when the [appellant] fails to raise them before the Board"); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to an appellant's failure to raise a duty to assist argument before the Board).

The Veteran is seeking service connection for PTSD. He has asserted that he was exposed to two traumatic events during service. He reports that, in approximately April or June 1973, he was jumped/attacked by a group of tall people at Paris Island, after which he was hospitalized. He also reports that, while training in the field in approximately 1975, he was bitten by an animal (which he has variously described as a rat or snake), after which he was subsequently hospitalized. 

Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999). 

Service connection for PTSD requires a medical diagnosis of PTSD in accordance with 38 C.F.R. § 4.125 (a) (2016); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304 (f) (2016).

In the absence of proof of a current disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

In this case, the evidentiary record does not contain a competent lay or medical diagnosis of PTSD. The Veteran was afforded two VA PTSD examinations, including in June 2010 and July 2016. During the June 2010 examination, the Veteran reported both of his stressors and stated that he has nightmares when he sees tall people and believes the reported animal bite is the cause of his current medical problems. However, after conducting a mental status examination, the June 2010 VA examiner stated that the examination results did not support a diagnosis of PTSD, as the reported animal bite is not something that currently distresses him and that, while he was picked on during service, nothing happened that could be construed as a traumatic event. Instead, the examiner determined the Veteran displayed symptoms of depressive disorder. 

The July 2016 VA examiner also determined the Veteran did not meet the DSM-5 criteria for PTSD, as the reported animal bite (the only stressor the Veteran endorsed during the examination) was not a serious injury and did not involve exposure to actual or threatened death, as the Veteran only received a suture following the incident. In addition to not meeting the required stressor criteria (A), the examiner also noted the Veteran did not endorse any re-experiencing or avoidance symptoms related to the rat bite sufficient for criteria B and C. In this regard, the examiner noted the Veteran indicated that he had one memory of the animal bite in the month leading up to the examination, without reporting any other persistent or recurring re-experiencing or avoidance symptoms. As also noted by the examiner, the Veteran did not describe any current psychiatric sequelae from the animal bite incident, further noting that the Veteran's report of concentration problems was not likely related to the animal bite stressor. 

With respect to the other claimed stressor of being jumped in service and subsequently hospitalized, the July 2016 examiner noted the service treatment records contradict this claim, as there is no evidence of any inpatient admission during military service. The examiner also noted the Veteran did not cite being jumped as a source of current distress. Therefore, the examiner stated it is less likely than not that the Veteran has PTSD as a result of being jumped during service. 

In sum, the July 2016 VA examiner determined the Veteran did not meet the criteria for PTSD and also noted the Veteran never had a clinical diagnosis of PTSD. 

The opinions provided by the June 2010 and July 2016 examiners are based upon review of the record, the Veteran's lay statements, and comprehensive mental status examinations. They are also supported by clear and complete rationales and are consistent with the other the medical evidence of record which does not contain a diagnosis of PTSD. Therefore, the Board finds the June 2010 and July 2016 VA examinations and opinions are the most competent, credible, and probative evidence of record with respect to whether the Veteran has a competent diagnosis of PTSD. 

While the Veteran may sincerely believe he has PTSD, he lacks the medical training and expertise needed to diagnose a specific mental disorder, as such is a complex medical question that is not capable of lay observation and requires medical expertise to determine. Therefore, the Board must rely on the competent medical evidence of record. See Young v. McDonald, 766 F.3d 1348, 1353 (2014); see also Clemons, 23 Vet. App. at 6 ("It is generally the province of medical professionals to diagnose or label a mental condition, not the claimant.") 

Consequently, as there is no competent medical evidence of a PTSD diagnosis consistent with 38 C.F.R. § 4.125 (a) (2016), the Veteran has not provided proof of the currently claimed disability. Therefore, there can be no valid claim based on that disability, and the Veteran's claim for service connection for PTSD must be denied. Brammer, 3 Vet. App. at 225.


ORDER

Entitlement to service connection for PTSD is denied.


REMAND

As noted in the Introduction, the Veteran has been variously diagnosed with several other psychiatric disabilities, including mood disorder, cognitive disorder, depressive disorder, and a neurocognitive disorder. See e.g., VA treatment records dated December 2011, April 2013, March 2016. Notably, the diagnoses of depressive disorder and neurocognitive disorder were confirmed on VA examinations conducted in June 2010 and July 2016. 

There remains, however, a question as to whether the Veteran's depressive disorder and neurocognitive disorder were incurred in or are otherwise related to his military service. 

The Veteran was diagnosed with a depressive disorder during the July 2010 VA examination and the diagnosis of depressive disorder is also reflected in several VA treatment records. See e.g., VA treatment records dated August 2010 and August 2011. The June 2010 VA examiner noted the Veteran's report of traumatic events during service but opined that his depression likely stemmed from his medical condition and financial circumstances. He also noted, however, that the Veteran's depression may be attributable to his long-standing feelings of being treated unfairly by others, which, the Board notes, the Veteran has reported occurred during and after in service. Nevertheless, it does not appear the examiner adequately considered whether the Veteran's depression is related to his experiences during service, including feeling like he got picked on a lot and being under pressure all the time, both of which he reported during the examination. 

The July 2016 VA examiner also suggested that the Veteran's depression is not likely related to service, noting that the Veteran endorsed having depression at entry to service, that there is no evidence of depression or mental health symptoms in the service records, and that the Veteran was not diagnosed with depression until several years after service. While the July 2016 VA examiner noted the Veteran endorsed having depression at entry to service, neither he nor the June 2010 examiner addressed whether the Veteran's depression existed prior to service and was aggravated therein. 

Given the deficiencies in the June 2010 and July 2016 examinations, the Board finds an addendum medical opinion is needed regarding the likely etiology of the Veteran's depression. 

With respect to the neurocognitive disorder, the July 2016 VA examiner noted the Veteran has a clinical diagnosis by history of unspecified mild neurocognitive disorder, noting that he used the "unspecified" diagnosis because there is insufficient information to determine the etiology of the condition. However, the examiner then stated that it is beyond his expertise to determine whether this condition has a nexus to service because he is not trained in neurology or neuropsychology. 

Later in July 2016, a different VA psychologist, Dr. H., reviewed the record and opined that the unspecified neurocognitive disorder was less likely than not incurred in or caused by head injuries sustained from boxing during military service. In making this determination, Dr. H noted that, under the DSM-5, the "unspecified neurocognitive disorder" category is used when the precise etiology cannot be determined with sufficient certainty to make an etiological attribution and that, by definition, there can be no specific etiology (such as a major or minor neurocognitive disorder due to traumatic brain injury (TBI) as can be associated with head injury) when this diagnosis is used. He further suggested that the Veteran's neurocognitive impairment could be related to his history of substance abuse and/or cerebrovascular disease. 

While the opinions provided in July 2016 are competent medical evidence, the Board finds that the opinions are based, at least partially, on inaccurate facts, i.e., that the Veteran has been diagnosed with an "unspecified" mild neurocognitive disorder. On the contrary, VA treatment records reflect that his diagnosis is a "mild neurocognitive disorder secondary to a head injury," which examiners have specifically attributed to his boxing career. See e.g., VA treatment records dated May and October 2014, February and September 2015, and March 2016. It is not clear how the July 2016 VA examiner determined that the Veteran's neurocognitive disorder fit into the "unspecified" category of the DSM-5, given the other evidence of record and given his lack of expertise in neurocognitive matters but, Dr. H. (who provided the second VA opinion in July 2016) relied on the "unspecified" diagnosis provided by the initial VA examiner in finding that the current neurocognitive disorder was not related to the Veteran's in-service boxing history. 

While the VA treatment records clearly relate the Veteran's neurocognitive disorder to a head injury, it is not clear if that diagnosis was based upon a comprehensive neurocognitive examination with consideration of the Veteran's service medical records or his lay statements regarding the nature and onset of his disability. In this regard, the Board also finds probative that the Veteran has only been afforded VA PTSD examinations, as opposed to a VA neurologic or mental disorders examination, which would likely be more probative as to the nature of any current psychiatric or neurocognitive disability other than PTSD. 

Based on the foregoing, the Board finds a remand is necessary to schedule the Veteran an appropriate VA examination to clarify whether he, in fact, has a neurocognitive disorder that is related to his military service, including any head injuries incurred as a result of boxing during service, or some other unspecified etiology. 

Accordingly, the case is REMANDED for the following action:

1. Obtain an addendum opinion regarding the Veteran's depressive disorder. After reviewing the record, the examiner should first determine whether there is clear and unmistakable evidence that the Veteran's depression (or some other psychiatric disability) existed prior to service. In this regard, the examiner should consider the evidence showing the Veteran reported having depression and excessive worry at his August 1972 entrance examination. 

If so, determine whether there is clear and unmistakable evidence that the Veteran's preexisting depression (or other psychiatric disability) was NOT aggravated by service (beyond the natural progress of the disease and not merely a temporary flare-up).

If depression is NOT identified as preexisting service, determine whether it is at least as likely as not (a probability of 50 percent or greater) that such disability began in or is related to active service.

In answering the above inquiries, the examiner is asked to specifically address the Veteran's contentions that he was picked on a lot and was under pressure all the time during service, as well as the other events he reports occurred during service. 

A rationale should be provided for any opinion given.

2. Schedule the Veteran for appropriate VA examinations to determine the current nature and severity of his neurocognitive disorder, including but not limited to, a VA psychological examination with neurocognitive assessment or VA neurological examination, if deemed appropriate. 

All appropriate tests, studies, and consultation should be accomplished and all clinical findings should be reported in detail. The entire claims file, including a copy of this Remand, should be made available to and reviewed by the VA examiners. 

After examining the Veteran, the examiner should clarify the nature of the Veteran's neurocognitive disorder and then opine as to whether it is at least as likely as not (50 percent or greater probability) the neurocognitive disorder disability was incurred in or is otherwise related to the Veteran's military service, including head injuries sustained while boxing during service. 

A complete rationale must be provided for any opinion rendered.

3. Readjudicate the claim on appeal. 

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
R. FEINBERG
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs